The first case for argument this morning is 17-2424 Victaulic Company v. Iancu. Mr. Collins, whenever you're ready. Thank you. May I begin? May it please the court, I'm Brian Collins on behalf of Victaulic with my colleague Mr. Kears. This patent relates to pipe couplings, specifically a method of installing pipe couplings, and what we're talking about is really three key features in this method claim. The pipe coupling has to have multiple segments, which means they have sort of two almost C-shaped things. When you're installing them, they have to be connected end to end, meaning the fasteners have to be secured at the end. It's kind of called a closed loop connection, and the pipe is actually inserted while the ends are assembled. This is marketed and trademarked as what's called an assembled does not need to be disassembled in the field, no loose fasteners, no loose bolts. You could stab it right on top of the pipe. This is your patent as well, right? Lewis, are you the? Yes, Lewis actually is a Victaulic patent also, and then the dependent claim refers to a step that accommodates this. It's called deforming to conforming because basically the real challenge of getting these pipe couplings onto the pipe is the clearance that you have to achieve in order to get the coupling separated and around the pipe. One way to do it, it's a preferred environment in the client's patent, is deforming it, so basically widening those segments out so that you can clear the pipe, and then deforming them over the pipe, and that's what's in claims two and ten. So really the real benefit of this invention is the great thing is there's absolutely no disassembly in the field. It goes right on the pipe, extremely easy for the worker to deal with. We're dealing with an anticipation rejection against the independent claims one and nine, and obviousness rejections against the dependent claims two and ten. Notably, there's no obviousness rejection at all against the independent claims. I'm going to start off with the anticipation rejection. What we're dealing with that's cited as the prior art or the disclosed embodiment in the Lewis patent is a figure 3A, which is really a hybrid figure 3A. Figure 3A... Yeah, wait, just to interrupt you for a minute. You talk about figure 3A, but as I understood the PTAB's position, they weren't relying on figure 3A so much as the disclosure earlier in the patent about how you could have multiple segments and fastening means at each segment, and that those fastening means could be a nut and bolt at each separation between two segments. And that is how they, what the petitioner often is their explanation to get to what's called a figure 3A embodiment. I think because what you have in the patent really is you have to look at, you have two distinct embodiments in the detailed disclosure. And the points that you are discussing, which are part of the invention summary, so what I was going to say was if you look at the detailed disclosure first, what you have is one embodiment, that's figure three, figures one through three, that satisfies two of the claim limitations in the sense that it has axial insertion. It seems to me that the big distinction, the difference between your understanding of the prior art and the PTAB's understanding of the prior art is that it's your view that really those statements, broader statements in the summary of the invention are simply describing what's depicted in the figures. Absolutely. They shouldn't, those statements shouldn't be understood to mean more than that. Absolutely. They are a preview of what's coming up in the detailed descriptions. No different than a generic claim, for example. If a generic claim said something similar, one wouldn't necessarily think that the claim discloses other features also. The invention summary is really a preview. And if you read the invention summary, it starts off... If it's a broad claim in your hypothetical? Absolutely, but it doesn't necessarily mean it disclosed the improvements. And the improvement here is having... Does it matter to a certain extent, when you're talking about disclosure, does it matter to a certain extent the knowledge of one of Ordinary's filmy art, what they might understand from these broad statements? How someone would interpret a statement is one thing, but what we're dealing with here is we're starting to talk about adding features together, combining features together from the two embodiments disclosed. So I think this is really where we get to this dividing line between you have the Kenna Metal case, and then you have cases like Net Money and NIDEC that do talk about situations like this. Kenna Metal is on the one side where you had five coatings, three binders, or maybe it was five bindings and three coatings. And a statement in the specification said that you can use them together. And the court said, well, that discloses 15 different possibilities because it has an express disclosure. With a NIDEC case, for example, you had a case which we believe is much more like our situation where the patent had two disclosed embodiments, but no real express disclosure that features of the two embodiments could be combined to collectively arrive at the claim. The two embodiments had all the features of the claim collectively, but neither embodiment individually had that. And really what NIDEC was saying was Kenna Metal needs some type of express disclosure, some suggestive combination possibilities that you would take the features of the two mixed embodiments or the two different embodiments and mix and match them together. Because the two embodiments, each one of them satisfy at best two of the key features of the claim, but not all three. And the summary... What about where it says, just going, I'm following what you're saying, but what about the part of the specification that says that the fastening means may conveniently comprise appropriate nuts and bolts fitting within boards and lugs adjacent each side of the axial slit? I mean, why isn't that enough? You know, with some sentence immediately, it occurs immediately after the statement saying that you could have plurality of segments. Why in this mechanical invention isn't that enough to disclose that you could have two segments or more than two segments with nuts and bolts at each board where there's a separation between the segments? No, I think the sentence you're citing, I just want to be 100% clear. The column five lines eight through 11. Gotcha. I just want to be 100% clear that I'm pulling the right one out. But I believe that's the one that ends in the axial slit. Is that sentence? Right. Right. Okay. So it's extremely common on these because you want to apply pressure on what we call the bolt pad, which is the side where they're connected. And that's where you would have one axial slit, the axial slit to have two nuts and two bolts on each side so that pressure is applied to that. That's in fact, the lane reference that's used in the obviousness combination shows having two nuts and two bolts on one axial slit. I think the key part of that sentence is that it ends in the word nuts and bolts, plural, on the axial slit. What they're saying is that you can use- You're saying if it's two axial slits, then it's the plurality or lack of, it's the use of singular here that you're relying on? Yeah. I think that sentence is saying that you can use nuts and bolts on one axial slit, which nobody really disputes that you could use two nuts and two bolts on the axial slit. That sentence is talking about the single segment embodiment, and it's talking about the slit and the singular. That's consistent. That's not saying that you can use multiple sets of nuts and bolts on multiple axial slits. And I think the plural on nuts and bolts there gave rise to a misunderstanding that they were talking about different locations. I'm sorry to interrupt you, but what about the preceding sentence that says you could have a singular that's for- Oh, thank you. The plurality of segments. The preceding slit, this is the one- Actually, this is the preview of Figures 1 through 3. The housing may, with joints and couplings of small to moderate size, be comprised by a single segment split by a single axially extending slit. So that's talking about the first embodiment. That's the summary preview of the first embodiment. It's talking about the first embodiment, and it's not talking more generally. Because it's talking about a single- It doesn't say that it's talking about the first embodiment, does it? Well, it says it's talking about a single axially extending slit. Figures 1 through 3 is the only embodiment that has a single axially extending slit. If we're on page 5, single axially extending slit- I was looking at the disclosure on page 5, lines 12 through 14, that says, for larger size joints, you could have a plurality of segments and fastening means. Oh, I'm sorry. When you said the nuts and bolts, I was looking at lines 9 and 10 in the sentence that ends in the axial slit. Well, I had moved up. I said, why doesn't the sentence that precedes the one at 9 through 10, why doesn't that tell you that you could have plural fastening means, plural, not singular? Okay, because the sentence is false. Got it. For larger size joints, I think what they're Now, let's go look at the detailed description and see what they show, and they show different types of design. I don't think what they're saying- There's no suggestion that they're saying that you can have a single segment embodiment like the one that's in figures 1 through 3, because this is a summary of the invention. This is a preview of what's coming up, and you have to look at it in context of what do they describe later. I'm summarizing, and what do I then describe in detail? Because that detail is a critical part of the disclosure. In fact, that's the real context of the disclosure, that this next sentence is just previewing what's coming up in figures 6 through 10, where they do create a different design that is much larger and opens up much wider to accommodate larger pipes. When you look at this in context of the full disclosure, there's nothing about this sentence that comes out and jumps out and expressly commands that you can take the figure 3 type embodiment and have it continue to behave with multiple segments. I think it kind of goes back to the initial point that the difference between your interpretation of the reference and the PTAB's interpretation is whether those sentences in the summary of the invention should be read in light of the preferred embodiments that are depicted in the figures and therefore limited to just those embodiments. Well, I think they should be absolutely read in the context of those embodiments. Yes, because I think those embodiments are the totality of really what's being disclosed. I think there's another point to make there. Also, you can't just take a single segment. Would your view change if those sentences were in the written description part compared to being in the summary of the invention? I think the view would be more favorable to the Patent Office if it said, in this embodiment of figures 1 through 3, you can also have an additional slit, an additional snut and bolts, and things like that. I mean, if it was talking about that specific embodiment, but when you read this, what it's not telling you, it's not like KennaMetal where it says, you can use these three things and these five things together. When you look at the summary and then you go read what comes in detail, you do see two separate things with nothing saying that you could use features of them together. I think another thing that comes out of this that's missing, that's really fundamental, is how would you pull it off? They don't give you really any details of how you create the minimum distance, and this is the claim construction issue, that's really required to get these pipe segments to clear enough for the pipe. They don't actually move just a little because there's a lot of clearance and a lot of features that you have to do. For example, the Victaulic patent itself has a number of means for doing it. It widens it out. That's a deform to conform feature. It puts some springs on the bolts. It creates longer bolts, and it does things like that. This patent doesn't tell you how you would achieve the distance required for axial insertion. In fact, when we challenged the petitioner on this issue, what they came back with in appendix page 3098 was an actual new design for this. They came up with a new design where they added longer different bolts than what they showed in their original figure 3A, and what they said was the disclosure of Lewis. They actually had to come up with a new design in a reply brief that would work when that point was challenged. That's a modification, and if they had to make a modification to make it actually become axially insertable, that's a question of obviousness. You have to start getting into why would you make the modification? Would that be a choosable or advisable modification? Level of ordinary skill in the art, but those things is once you talk about changing what's disclosed in the reference, you start talking about obviousness, and that wasn't instituted in this case because they didn't put an obviousness case on. Why don't we... You're into your rebuttal, so why don't we... Okay, thank you. May it please the court. Substantial evidence on the case law supports the board's reading of the Lewis patent. Just to go back to your friend's very final point, and I can't remember in the record, did the petition allege, with respect to these claims, both anticipation and obviousness, and did the board therefore just end up instituting on anticipation? That is correct. The petition had a Lewis obviousness ground that was not instituted on. And is the PTAB just as an aside? What are they... Is SAS playing into what the board is doing with that? At least the cases are pending now. This case was probably out the door, right? Right, yeah. So this case, the board isn't dealing with cases that are already gone. I believe, I'm not 100% sure, but the pending cases where there are grounds that weren't instituted on, I believe the board is relooking at those cases. So the board had substantial evidence for relying on its reading of the Lewis patent. It relied on a number of disclosures in Lewis itself, where it talks about using the plurality of segments for larger joints. There's no statement in Lewis that says you cannot use, you know, the larger joints or plurality of segments for the Axley insertion. Limitation. Yeah, but that's not required, and that doesn't get you to anticipation just because it doesn't preclude something. But the question is whether or not there's a sufficient disclosure. Right, that's certainly true, but... What are you relying on for the disclosure? So there's a number of disclosures along with the expert testimony. And I would rely on the disclosure that you pointed to earlier regarding the fastening means. There's also the disclosures of the at least one slit, which is on page four of Lewis. What do you make of the argument that those, that's just language that's in the summary of the invention, and that it shouldn't be interpreted to expand what the exact embodiments are in the written description? I have two responses. I think substantial evidence standard does if the board reads it one way, even if that's not the, it could be another way of read, that substantial evidence supports the board's reading of that. And the other answer that I would say is that... What's the substantial evidence that supports the board's reading of that? The substantial evidence is the expert testimony that said this is how one of ordinary skill in the art would read it. The disclosure, the explicit disclosure of pre-assembled couplings, of using multiple segments for couplings, of using multiple different fastening means for couplings. And I would also point you to two other points where, sort of in the invention summary in the end, you could almost say on 2545 when they're talking about the invention, they're saying that it can be assembled on the pipes without any dismantling. So that's on 2545, 16 to 21. You know, the other side is trying to tie that language to a specific embodiment, but that language is just generally talking about the coupling and joint as described herein permits, you know, misalignment. And then it says that... What does it say as described herein? I'm looking at page 12. On 16, the coupling and joint as... Oh, herein described, sorry. Okay, page 16? Sorry, no, page 12, but 2545 of the appendix, line 16. Okay, thank you. So it says the coupling and joint as herein described. And then it says, you know, the coupling may be easily and quickly fitted to pipe ends and can be assembled without any dismantling. And they try and say that the dismantling has a different meaning, but the clear words say without any dismantling. And that's... And you're relying on the as described herein. It's not saying as described in figures 6 through 10 or 1 through 3. It says as described herein. And then if we look further up on that page, on lines 6 through 8, it also talks about the rib where it would be making contact with the ribs. So that indicates that you would have axle insertion and that... So the rib disclosure leads one to believe that there is axle insertion in the couplings that are described in the application. And do you also have the view besides the expert testimony that you're referring to? Does the PTO also have the view that the statements in the summary of the invention otherwise... Because this is a mechanical invention, that it would be just proper as a legal matter to interpret those sentences as being disclosures as themselves as opposed to interpreting this reference as being limited to that specific embodiments in the figures? I would agree that the way that the other side is reading this reference is unnecessarily limiting it. There's nothing in that invention disclosure that is limiting it. Here you have, you know, saying that you can use axle insertion, you can use different fastening means, you can use, you know, two couplings. And with the Ken metal and also the blue Calypso case, both of those cases support the reading that if you have these explicit disclosures of these different features, an anticipation rejection is proper. There was also a point being made about the minimal distance limitation. Right. And maybe some modifications to figure 3a. Could you address that, please? Sure. So the minimum separation distance, if we look at what the claim actually says, it says that the segments are attached to another at both ends, supporting segments in space relation sufficient to permit insertion of end portions of said pipe elements into that central space. So reading that, if a coupling is allowing for axle insertion, it will have space relation sufficient to permit that axle insertion. So it's not as narrowing of a limitation as the other side is arguing. And that's simply what the board said. The board didn't read that space relation out or anything like that. They just said that minimum separation distance and this claim insertion issue was not before the board. They did not ask for construction of these claims. Or that limitation. This, you know, this was an argument that was made in the context of if Lewis teaches it. And so that limitation, if you have axle insertion, you would have enough distance to have it be allowed. And Lewis clearly teaches axle insertion. So there is not a minimum separation distance. I mean, that language is not in the specification at all. They don't, you know, list a specific separation distance that is necessary. And the board found that that claim was met by the disclosure of the fact that Lewis would loosen the nuts and bolts. Is the claim language that they're relying on, just to make sure I'm following, is it the language in space relation sufficient to permit insertion? That is what they said requires a minimum separation distance. And, you know, if we look at their specification, they do talk about a variety of ways, like using the angle of the arcuate surfaces and other ways to get there. But that's not in that claim. So this argument is really about the Lewis teaching that limitation and not a new claim construction issue. Is there any further questions? Thank you. Thank you, Your Honors. Real quick, the language my colleague here said about the coupling and joint described herein and the without dismantling, well, that's true for figures one through three that you can insert it in there because it doesn't get dismantled. But as our point was, that's a single segment coupling. With figures six through ten, there is axial insertion if you disassemble the ends and open it up. And that's what that rib is there for on figure 11 is for locating it. I don't think anyone's disputed that you can put a pipe end into the figure six through ten embodiment when it's opened up and without any dismantling is because there's a slit in the gasket and it can stay in the segment when you open it up. But figure six through ten, the fasteners have to come off. And that's a limitation that's required by my client's claim that that's not present in that embodiment. So that language generalistically describes the embodiments in Lewis, but it doesn't say that you can pull this off while the fasteners are together. And that really does get to that minimum separation distance in a sense is really what's missing is if you take a look at pages 37, 3,097 and 3,098 of that appendix and you compare those side by side, we challenge that Lewis isn't capable of getting far enough apart while the ends are connected. Minimum separation distance, which is the sufficient language to get the pipe in there, they had to change the design. And that's an obviousness question. And if it's an obviousness question, that's not something we're able to decide because not part of the scope of the proceeding. And we would have had different discovery, different arguments and different presentation at the board below. We didn't get to the defendant. Well, I guess I'm out of time. Thank you. Thank you very much. We'll rely on your briefs for the other issues. Great. Thank you. Thank you. The case is submitted.